**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

STEVEN D. HAMLIN,

      Plaintiff,

v.                               Civil No. 05-CV-10293-BC

COMMISSIONER OF            DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

      Defendant.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION**

      In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.**     **REPORT**

     **A.**     **Introduction and Procedural History**

      Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

benefits and supplemental security income benefits.  This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 48 years of age at the time of the most recent administrative hearing and has completed an eleventh grade education.  (Tr. at 452, 454.)  Plaintiff's relevant work history included 17 years' work for an electrical contractor.  (Tr. at 302.)

Plaintiff filed his first claim for disability benefits on September 22, 2000.  (Tr. at 73-75.) The claim was denied at the initial stages, and after a hearing before an ALJ.[1]  (Tr. at 240-245.) Plaintiff filed the instant claims on April 1, 2003, alleging that he became unable to work on January 25, 2003.  (Tr. at 275-77, 427-30.)  The claims were denied initially.  (Tr. at 250, 431.) In denying Plaintiff's claims, the Defendant Commissioner considered myofascial back pain, osteoarthrosis and allied disorders as possible bases of disability.  (*Id.*)

On May 11, 2005, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Barbara J. Welsch, who considered the case *de novo*.  In a decision dated July 8, 2005, the ALJ found that Plaintiff was not disabled.  (Tr. at 16-30.)  Plaintiff requested a review of this decision on August 30, 2005.  (Tr. at 15.)

The ALJ's decision became the final decision of the Commissioner when, after the review of an additional exhibit[2] (AC-1, Tr. at 436-48), the Appeals Council, on September 26, 2005,

---

[1] Plaintiff failed to seek review of the unfavorable decision issued by the ALJ on January 24, 2003.  (Tr. at 240-45.)

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

denied Plaintiff's request for review. (Tr. at 10-13.) On November 15, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730

F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992).   When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).   There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review).   Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

## C.     Governing Law

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).   The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).   If relief is not found during this administrative

4

review process, the claimant may file an action in federal district court.  *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).  "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B).

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).  "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*)  Title II benefits are available to qualifying wage

earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, <u>Federal Disability Law and Practice</u> § 1.1 (1984). While the two programs have different eligibility requirements, both require a finding of disability for the award of benefits.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.

Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.

Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.

Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

**D.      Administrative Record**

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen for physical therapy evaluation on March 28, 2003.  Plaintiff complained of pain in the low back, neck and shoulders.  The treating physical therapist's summary indicates that Plaintiff was injured in 1982 when he fell or jumped off of a pole, and he has had numerous falls and accidents through the years.  He injured his low back again in 1992, and was having more symptoms again which caused him to be re-evaluated.  (Tr. at 366.)  The physical therapist reported that Plaintiff could not flex backwards due to pain, but he could right side bend to 20 degrees, left side bend to 15 degrees, rotate to the right 5 degrees and to the left 20 degrees.  He could flex forward to 45 degrees.  (Tr. at 367.)  The physical therapist felt that Plaintiff needed to strengthen his abdominal muscles in order to support his lower back and to prevent further stress and injury to his back.  The physical therapist suggested pelvic stabilization, posture and body mechanics education, and manual therapy to decrease pain.  (Tr. at 368.)  Plaintiff was seen for two therapy treatments after his initial visit and reported that he did not feel any different.  Plaintiff had difficulty with abdominal bracing and tightening abdominals.  He did not appear receptive to suggestions.  He did not report for his appointment on April 14, 2003, and the therapist discharged him reporting that short term goals were attained but long term goals could not be assessed.  (Tr. at 384.)

On June 19, 2003, Plaintiff was seen by Dr. James Decker for evaluation of his back and neck problems.  Plaintiff reported that his pain was aggravated by physical therapy and that it was provoked with standing in a particular position for too long.  He did not feel that it was getting more severe, however.  Straight leg raising was positive on the right at approximately 70 degrees, and negative on the left.  (Tr. at 422.)  The doctor reported no evidence of spasticity or atrophy and

7

that Plaintiff was able to flex his spine, getting his fingertips approximately one foot from the ground. Lateral bending was restricted. The doctor assessed musculoskeletal low back pain and recommended that Plaintiff continue with his medication, take muscle relaxants, use heat, engage in activity as tolerated, with no pushing, pulling or heavy lifting. (Tr. at 421.)

On July 25, 2003, Plaintiff was seen at the request of the Disability Determination Service by Dr. Michael Lumberg. Upon examination, the doctor reported that Plaintiff could pick up a coin, button clothing, and open a door. He could get on and off the examining table, had no difficulty squatting or hopping, and moderate difficulty heel and toe walking. All range of motion tests were within 10° of normal. (Tr. at 396.) The doctor diagnosed degenerative disc disease and muscle spasm. He stated that Plaintiff had no muscle atrophy and no real limitations. Motor strength and muscle tone were assessed to be normal. (Tr. at 397.) Reflexes were normal, and orthopedic testing was negative. (*Id.*)

Plaintiff saw Dr. Decker again on July 31, 2003, and reported that his symptoms had not improved. (Tr. at 420.) Plaintiff reported no numbness or paresthesias involving the lower extremities, but that his back remained painful. The doctor found that straight leg raising was negative bilaterally. (*Id.*) Plaintiff was able to flex his spine, getting his fingertips to within one foot of the ground. Dr. Decker assessed myofascial pain syndrome with degenerative disk disease of the lower spine and osteoarthritis of the spine. The doctor recommended a second opinion and an additional MRI.

On August 14, 2003, Plaintiff saw Dr. Decker again and was despondent over his myofascial pain syndrome. Dr. Decker prescribed medication and stated that he would see Plaintiff again in a week. (Tr. at 419.)

Plaintiff was seen by Dr. Merle Rust on September 26, 2003, for a second opinion regarding his history of low back pain. Neurological examination revealed no significant motor, sensory or reflex findings. (Tr. at 410.) The doctor reviewed Plaintiff's previous MRIs and found no evidence of misalignment of the vertebrae or bone marrow change suggestive of tumor or infection and did not note any other significant changes. Dr. Rust diagnosed chronic lumbago and recommended regular exercise, physical therapy, anti-inflammatory medications, and chronic pain management. The doctor did not feel that surgery would be a benefit at this time. (Tr. at 411.)

Plaintiff returned to Dr. Decker on October 7, 2003, at which time Plaintiff stated that he was doing reasonably well. He stated that a TENS unit helped him in the past, and the doctor agreed to try that again. Plaintiff felt that the antidepressant was helping and that he was looking for work. Dr. Decker stated that there was no evidence of fibromyalgia. (Tr. at 418.)

Plaintiff was seen by Dr. Decker on December 31, 2003, for a physical examination, at which time he stated that he was still having problems with the myofascial pain syndrome. (Tr. at 417.) The doctor reported that neurological examination indicated no evidence of headache, weakness, numbness, paresthesias, spasticity, vertigo, or atrophy. (Tr. at 416.)

At the administrative hearing, a vocational expert (VE) testified. He characterized Plaintiffs prior work as unskilled and medium in exertion. (Tr. at 469.) In response to a hypothetical question presuming a person of Plaintiff's age and circumstances, who was limited to light or sedentary work which involved no climbing or working at unprotected heights, nor repetitive bending, stooping, twisting, crouching or crawling, the VE opined that such a person could not undertake Plaintiff's prior work. The VE identified approximately 50,000 unskilled sedentary and light exertion machine operator and small parts assembler jobs consistent with these hypothetical

conditions.  (Tr. at 469-70.)  The VE also identified 30,000 light exertion unskilled cashier jobs as well as 3000 sedentary unskilled clerical positions.  (Tr. at 470.)

### E.      ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claims and found at step one that Plaintiff had not engaged in substantial gainful activity since the onset of his disability.  (Tr. at 29.)  At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*)  At step four, the ALJ found that Plaintiff could not perform his previous work.  (Tr. at 30.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy.  (*Id.*)  Using the Commissioner's grid rules as a guide, the ALJ found that "there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs were cited by the vocational expert."  (*Id.*)

### F.      Analysis and Conclusions

### 1.      Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work.  (*Id.*)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the relevant evidence of record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2.      Substantial Evidence

At the threshold, I must first assess the effect of the Commissioner's decision denying Plaintiff's first claim for disability insurance benefits.  As pointed out previously, Plaintiff failed to seek timely review of this decision.  Where an applicant for disability benefits fails to seek judicial review of the Commissioner's final decision denying his claim, he or she is barred under the doctrine of administrative *res judicata* from reasserting a later claim for the same disabling condition and the same period of disability in a subsequent application.  Instead, the period of disability an applicant may claim in a subsequent application is limited to the period after the date of the Commissioner's final decision on the previous application.  *Califano v. Sanders*, 430 U.S. 99 (1977); *Gibson v. Sec'y of Health, Education & Welfare*, 678 F.2d 653 (6th Cir. 1982). Accordingly, the decision of the ALJ, dated January 24, 2003, is *res judicata* as to the issue of Plaintiff's disability prior to that date.

This, however, does not end the analysis since Plaintiff can file new evidence relating to disability, which, if found to be sufficient, could support a finding that Plaintiff has become entitled to benefits for some period subsequent to January 23, 2003. This eligibility, however, is limited by Commissioner's insured status regulations.

In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i).  It is improper for an administrative law judge to concentrate on a claimant's

abilities and condition at the date of hearing, rather than during the time period when plaintiff met the special earnings' requirements. *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). In this circuit, to qualify for social security disability benefits, disability must be proven to exist during the time the plaintiff was insured within the meaning of the special insured status requirements of the Act; and if plaintiff becomes disabled after the loss of insured status, the claim must be denied even though plaintiff has indeed become disabled. *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *see also Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979); *Moon v. Sullivan*, 923 F.2d 1175 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Thus, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.

In *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976), the court held, however, "Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." Directly on point, the Sixth Circuit held in *Higgs*, 880 F.2d at 863, that the Commissioner must consider medical evidence of a claimant's condition after his date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured.

In this case, the ALJ, after review of Plaintiff's social security earnings' record (Ex. 3D, Tr. at 78-82), concluded that Plaintiff's insured status ended on December 31, 2004. This was the last quarter in which Plaintiff had 20 quarters of contribution within a 40-quarter period. 20 C.F.R. § 404.130(b). The ALJ therefore ruled that only that evidence pertaining to Plaintiff's condition prior to that date could be considered in support of the disability benefits claim.

On the basis of the Social Security Act and the *Estep* case, which controls in this circuit, I conclude that the ALJ properly found that Plaintiff's insured status ceased as of December 31,

12

2004, and that, therefore, his refusal to consider later medical evidence was proper.  As a result, the combined operation of the insured status requirements of the Act and administrative *res judicata* limit the period of Plaintiff's eligibility for benefits to the time between January 24, 2003, and December 31, 2004.

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On the relevant evidence of record, I suggest that substantial evidence supports the findings of the ALJ.  Although Dr. Decker noted that Plaintiff's ability to laterally bend was restricted, and that straight leg raising was positive on the right, he found no evidence of spasticity nor atrophy, and noted that Plaintiff could flex forward bringing his fingertips approximately one foot from the ground.  (Tr. at 421-22.)  The Commissioner's consulting physician reported that all range of motion tests were within 10° of normal and that muscle strength and muscle tone and reflexes were all normal.  (Tr. at 396 – 397).  In late July 2003, Dr. Decker reported that straight leg raising tests were negative bilaterally.  (Tr. at 420.)  Dr. Rust reported that neurological examination revealed no significant motor, sensory or reflex findings.  (Tr. at 410.)  According to the doctor, previous MRIs showed no evidence of misalignment of the vertebrae or any other significant changes.  In October 2003, Dr. Decker stated that he found no evidence of fibromyalgia.  (Tr. at 418.)  In late December 2003, Dr. Decker reported that his neurological examination indicated no evidence of headache, weakness, numbness, paresthesias, spasticity, vertigo, or atrophy.  (Tr. at 416.)

Although counsel for Plaintiff contends that Dr. Decker's records show handwritten entries as late as March 2004 (Tr. at 416), none of these entries deal with Plaintiff's medical condition.

The ALJ's findings also follow the opinions of the VE which came in response to proper hypothetical questions that were appropriately consistent with the objective medical findings contained in the medical records available to the ALJ, and in particular, findings and assessments of Drs. Decker and Rust. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The ALJ did not find Plaintiff's complaints of disabling pain fully credible. Social Security regulations prescribe a two-step process for evaluating complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not

14

fully credible and provided reasons for this conclusion.  The issue is whether the ALJ's credibility determinations are supported by substantial evidence.  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).   When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999).  Under this standard, I suggest that there is insufficient basis on the relevant evidence of record to overturn the ALJ's credibility determination.

After review of the record, I conclude that the decision of ALJ Welsch, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y*

15

*of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/  <em>Charles E Binder</em>

CHARLES E. BINDER
United States Magistrate Judge

Dated: September 12, 2006

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Parker and Wendy Bailey, and served in the traditional manner on Honorable David M. Lawson.

Dated:  September 12, 2006                    By     s/Mary E. Dobbick
                                             Secretary to Magistrate Judge Binder